UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No. 20-CR-271-TNM |
| RENARDO WILLIAMS, | |
| Defendant. | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence Renardo Williams to a two-month period of imprisonment, followed by a two-year term of supervised release, with a special condition for six months of the term of supervised release to be served through home detention.

I.   INTRODUCTION

The government recommends that the Court sentence the defendant to two-months' incarceration, followed by two years of supervised release, with six months of that term to be served as home detention, which is within the advisory Guidelines' range calculated by the parties as part of the plea agreement of 6-12 months.[1] Such a sentence reflects the gravity of the defendant's conduct, but also acknowledges his early admission of guilt, his relatively lower-level of involvement in the health care fraud scheme, his lack of criminal history, and his employment history.

---

[1] The government notes that the Presentence Report noted the appropriate guideline range is 10-16 months, given that the loss amount is over $40,000, which results in a +6 enhancement, rather than the +4 calculated by the parties. Per the terms of the plea agreement, the government agreed not to advocate for a different offense level than the one calculated by the parties.

1

## II. FACTUAL BACKGROUND

The defendant worked as a bus attendant for the District of Columbia Office of Superintendent of Education ("OSSE"), in 2015-2016, when the events forming the basis of the crime here were committed. The defendant, and his co-conspirators, all held an Accident Policy, Cancer Policy, Hospital Indemnity Policy, and a Specified Health Event Policy with the American Family Life Assurance Company of Columbus ("Aflac").

In or about 2015, co-Defendants Sharell Pitts and Rhonda Pauline Williams, the defendant's sister, approached co-conspirators at the OSSE bus yards in the District of Columbia and offered to file Aflac claims for the co-conspirators. Specifically, Pitts, Rhonda Williams, Renardo Williams, and Raymont Owens, obtained medical paperwork that did not belong to them, shared the medical paperwork with each other, and used the medical paperwork of other individuals to file fraudulent claims. Some of the co-conspirators, specifically, Pitts and Rhonda Williams, used the medical paperwork that did not belong to them to file claims on behalf of other co-conspirators.

For example, co-defendants Sharell Pitts, Rhonda Williams, and the defendant, Renardo Williams, obtained the legitimate medical paperwork of G.P., relating to congestive heart failure at Medical Facility A in the District of Columbia. Renardo Williams submitted a fraudulent claim to Aflac using G.P.'s medical paperwork, and substituted the name of Renardo Williams for G.P.'s. On or about June 17, 2015, Renardo Williams received an electronic deposit from Aflac into his bank account in the amount of $4,992.

Similarly, co-defendants Sharell Pitts, Rhonda Williams, Raymont Owens, and Renardo Williams obtained the legitimate medical paperwork of A.F., relating to a broken leg from a fall in a parking lot and medical treatment at Medical Facility A in the District of Columbia.. The

2

defendant submitted a fraudulent claim to Aflac using A.F.'s medical paperwork, and substituting the defendant's name for A.F.'s. On or about August 12, 2015, the defendant received an electronic deposit from Aflac in the amount of $9,070.

The highest-value submission made by the defendant was with the medical paperwork of Z.D., relating to a leg fracture from a jump from a height and amputation and medical treatment at Medical Facility B in the District of Columbia. The defendant submitted a fraudulent claim to Aflac using Z.D.'s medical paperwork, and substituting the defendant's name for Z.D.'s. On or about December 23, 2015, the defendant received an electronic deposit from Aflac into his Meta Bank account in the amount of $27,550. Aflac sent in the United States mail an Explanation of Benefits to the defendant notifying the defendant of the deposit in this amount for this claim that defendant had fraudulently submitted.

The defendant admitted as part of his plea agreement that he personally obtained over $42,912 in criminal proceeds from the crime to which he is pleading guilty.

## III.  THE CHARGES AND PLEA AGREEMENT

The government charged defendants Pitts, Rhonda Williams, Renardo Williams, and Owens in an information filed December 4, 2020, with one count of conspiracy to commit mail fraud, wire fraud, and health care fraud, in violation of 18 U.S.C. § 371; one count of health care fraud, and aiding and abetting, in violation of 18 U.S.C. § 1347 and § 2; five counts of wire fraud, in violation of 18 U.S.C. § 1343; five counts of mail fraud, in violation of 18 U.S.C. § 1341; and nine counts of aggravated identity theft and aiding and abetting, in violation of 18 U.S.C. § 1028A and § 2. (ECF No. 1). The grand jury issued a superseding indictment on these same charges on December 16, 2020. (ECF No. 4).

On October 13, 2021, the defendant pled guilty to Count Two, Health Care Fraud, in

violation of 18 U.S.C. § 1347 and 2. His co-defendants Rhonda Williams and Sharell Pitts have also entered a plea of guilty to Count Two. Raymont Owens was arrested in November 2021, and is scheduled for a status conference in March.

The defendant is to be sentenced on Count Two of the Superseding Indictment, charging Health Care Fraud. The defendant faces up to 10 years of imprisonment, a fine up to $250,000, and a term of supervised release of not more than three years for Count Two. The defendant also faces mandatory restitution, in the amount of $42,912, and agreed to forfeiture in the amount of $42,912 as part of the plea agreement.

The parties calculated the Sentencing Guideline range as set forth in the grid below. Per the terms of the plea agreement, the government agreed not to argue for a different offense level other than that agreed upon by the parties.

| Guidelines Section | Calculation |
| --- | --- |
| Base Offense Level (USSG § 2B1.1(a)(1)) | 6 |
| Loss Amount +$15,000 (USSG § 2B1.1(b)(1)(G)) | 4 |
| Means of identification (USSG § 2B1.1(b)(11)(C)(i)) | 2 |
| **Adjusted Offense Level** | **12** |
| **Guideline Range** | **10-16** |
| With acceptance (USSG 3E1.1) | -2 |
| **Guidance Range** | **6-12 months** |

Probation calculated a sentencing guideline range of 10-16 months, based on their application of an enhancement of 6 points, rather than 4, because the loss amount was more than $40,000.

Because the defendant's guideline range, as calculated in the plea agreement, falls within Zone B, the sentence may be satisfied by a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention,

4

provided that at least one month is satisfied by imprisonment; or a sentence of probation that includes a condition or combination of conditions that substitute intermittent confinement, community confinement, or home detention for imprisonment. U.S.S.G. § 5C1.1.

The government's sentencing recommendation of two months' incarceration, including a term of supervised release of two years, which includes a special condition of six months of home detention, is within the guideline range calculated by the parties.

## IV. SENTENCING FACTORS UNDER 18 U.S.C. § 3553(A)

In this case, sentencing is guided by 18 U.S.C. § 3553(a). Some of the factors this Court must consider include: the nature and circumstances of the offense, § 3553(a)(1); the history and characteristics of the defendant, *id.*; the need for the sentence to reflect the seriousness of the offense and promote respect for the law, § 3553(a)(2)(A); the need for the sentence to afford adequate deterrence, § 3553(a)(2)(B); and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, § 3553(a)(6). In this case, as described below, the Section 3553(a) factors weigh in favor of a minimal term of incarceration.

### A. Nature and Circumstances of the Offense

The scheme in which Mr. Williams participated is serious. Pitts, Rhonda Williams, the defendant, Owens, and other unnamed co-conspirators, devised and implemented a scheme to defraud AFLAC by using legitimate medical records, substituting their personal identifiers and information, and submitting them to AFLAC for reimbursement. Mr. Williams submitted claims for himself on at least three occasions, totaling approximately $40,000 in reimbursement for himself. His crime is thus serious, and merits a minimal term of imprisonment.

### B. The History and Characteristics of the Defendant

The defendant does not have a criminal history, and has a history of employment, despite his lack of a high school or college education. This factor thus does not weigh heavily in favor of a term of imprisonment.

### C. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

Taking into account the other factors, including the loss amount and guideline range for Mr. Williams, a short period of incarceration will reflect the seriousness of the offense and promote respect for the law. The government recommends that as part of the period of home detention, the defendant be permitted to maintain employment, in order that he can meet his financial obligations under the terms of the plea agreement.

### D. The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010). A significant sentence is needed "to afford adequate deterrence to criminal conduct" by others. 18 U.S.C. § 3553(a)(2)(B). A short term of imprisonmnent, given the loss amount in this case and the other factors, should serve as a deterrent to others in engaging in this type of criminal scheme.

The need for the sentence to provide specific deterrence to this particular defendant also weighs in favor of a term of incarceration.

### F. Unwarranted Sentencing Disparities

Finally, as to 18 U.S.C. § 3553(a)(6)—the need to avoid unwarranted sentencing disparities—Renardo Williams is the first defendant in this scheme to be sentenced. Because the

loss amount for Mr. Williams's conduct is relatively low, compared to other large health-care fraud schemes, and as reflected in the appropriate guideline range, a sentence within the guideline range will not cause unwarranted sentencing disparities here.

V.     **CONCLUSION**

For the reasons set forth above, the government recommends that the Court impose a sentence of imprisonment of two months, a term of supervised release of two years, with six months of that term to be served in home detention, mandatory restitution of $42,912, forfeiture of $42,912, and the $100 special assessment.

    Respectfully submitted,

    MATTHEW D. GRAVES
    UNITED STATES ATTORNEY

By:    *Jennifer Leigh Blackwell*
    Jennifer Leigh Blackwell
    Assistant United States Attorney
    D.C. Bar No. 481097
    555 4th Street, N.W.
    Washington, D.C. 20530
    Phone: (202) 803-1590
    Jennifer.blackwell3@usdoj.gov